We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the first case on the docket this morning is 2-22-0240, the people of the state of Illinois, Plaintiff Appellee v. Dwayne Shipp, Defendant Appellant. Arguing on behalf of the Appellant, Mr. Chan Yoon. Arguing on behalf of the Appellee, Ms. Lynn Harrington. Thank you. Mr. Yoon, you may proceed. Thank you, Your Honors. Good morning, Councilmember of State. This appeal concerns the second stage dismissal of Dwayne Shipp's successive petition where he argued that he was denied effective assistance of appellate counsel where counsel failed to raise two meritorious issues on direct appeal. First, that trial counsel was ineffective for failing to request and accomplish instruction. And second, that the 9-1-1 call 9-1-1 call was admitted an error as a prior consistent statement. Shipp was unable to raise these claims during initial post-conviction proceedings because he had hired private counsel to review his case and file his petition. And this attorney failed to identify these issues in the same manner as direct appeal counsel. On appeal from the summary dismissal from his initial post-conviction petition, Shipp did argue that he was denied reasonable assistance for that reason. But this court declined to address the issue, finding that at the time there was no freestanding right to reasonable assistance at the first stage. In 2018, our Supreme Court weighed in on this issue in People v. Johnson and held that a petitioner who does retain private counsel at the first stage is indeed entitled to reasonable assistance. And on that basis, Shipp filed the instant petition, this successive petition, arguing that since our Supreme Court has recognized the right to reasonable assistance, that his claims should be addressed on the merits. And thus, Shipp has established cause for his successive petition. And notably, the state does not dispute that cause was established here. Shipp has also established prejudice, and that is that his claims so infected the trial that he was denied due process. Can we go to the claims themselves? Why was counsel ineffective for not asking for an accomplice instruction? Right, sure. So first of all, we're going to be analyzing this claim under the Strickland prong. So first, trial counsel was unreasonable for failing to request his instruction because first, Valerie Carpenter was an accomplice. She was charged with the same offense and she pled guilty to a lesser charge in exchange for testimony. So she qualifies under the definition and instruction was appropriate here. And there was no trial strategy behind counsel's failure to request instruction. To the contrary, trial counsel's entire strategy at trial was to discredit Valerie Carpenter. She repeatedly argued that she was an unbelievable witness during closing and even argued that her testimony was self-serving in order to protect herself from criminal liability. Wouldn't the accomplice instruction as published in the IPI have been confusing to the jury? Because the instruction directs the jury to consider the accomplice's testimony with caution with regard to her testimony that she was involved with the defendant. So the question in this case is ID, not who performed the acts, which you usually get in an accomplice instruction case where both the defendant and the accomplice are pointing the finger at each other. Here, the issue is identity. That was the sole issue. And she was thoroughly cross-examined with regard to her deal with the state, as well as her inconsistencies and her criminal record, correct? That's correct. So when the accomplice instruction is given as your honor identified, there are times when two defendants or one accomplice and the defendant are pointing the finger at each other. And that, of course, is like the accomplice instruction would be appropriate. But there are also other cases like this where accomplice is just testifying against the defendant. And the accomplice instruction just tells the jury to view that testimony with caution. There is a lot of ways that the state's attorney, the prosecutor can use an accomplice. That's a very powerful testimony because that person is going to have a firsthand account of what happened during the incident. In People v. McAllister, the Supreme Court stated that it is not always an effective, persistent or deficient performance to not ask for an accomplice instruction, especially where the jury is instructed regarding bias, interest, motive, prejudice, correct? That's correct, your honor. But in this case, I would argue that it was appropriate to give it. I mean, look here, Valerie Carpenter is the state's main witness. She is a person who explains why the victim had come to the house or to the apartment. She provides background for the case. She provides a motive for the case. She's the only identification testimony in this case. If the jury were not to believe there were if the jury were to believe counsel's arguments attacking Carpenter's testimony, that would have made a difference. And I do believe that if the instruction had been given, an instruction from the judge specifically telling the jury that they had to view Carpenter's testimony with caution, that certainly will create a reasonable probability. And that's what we're asking at. That's what we're analyzing at the second circumstance. And in deciding and looking at the impact of the failure to give that instruction, we look at the overall all of the all of the evidence collectively. Correct. We look at it and we decide to know whether or not you have established or established that the results of the trial may have been different or would probably be different. Correct. It's a deniable review. Yes, that's correct. You know, you're saying your reply brief that you cite Dr. Damagawa that for the proposition that a third stage hearing is required here. Why is that? Right, so. So. For these ineffective assistance claims, it might seem extraneous to have three stages to analyze, analyze what essentially is a legal claim, but at the third stage, you're determining whether there was trial strategy behind counsel's decisions. Right. So, I mean, I have seen third stage hearings where where the attorney is actually brought in to testify as to his as to his motives or as to his reasoning for taking a certain course of action here. Since we're talking about ineffective assistance of appellate counsel as well for direct appeal counsel, that could also be a possibility. But I understand that essentially this is a legal claim based on the facts and the record. And in Damagawa, there was an evidentiary issue raised by the failure to call an expert witness because there was a defense potential defense theory of gross medical negligence that was the cause of death. Correct? Correct. So that's why I had to go back for a third stage hearing. Correct. You were just reviewing the record, right? Right. So, I mean, if your honors are inclined to, if you agree that there was ineffective assistance of counsel in this case, I mean, it's our position to that this can move to a new trial if your honors were inclined to do so. It's just that the proper procedure here is to remand for a third stage hearing. And I'm just talking... What evidence would there be at a third stage hearing? And as I said, the relevant evidence would just come from the attorneys testifying as to the rationale for not asking for the instruction. Right. And when we look at ineffective assistance of counsel, we don't look at an isolated event. We look at the entire performance of trial counsel. Correct? That's correct. But when an isolated event can have a big impact on the trial itself, as we're submitting that happened here, then, you know, that can be grounds for ineffective assistance. Just because counsel does everything else correctly doesn't mean that one error is cured. If that error is prejudicial, then... In this case, why do you think the evidence was close? You kind of argue, you talk about the evidence. Why was it close? Right. So this is not... I just want to first clarify that the prejudice prong under Strickland asks whether there's a reasonable probability that outcome would have been different. And that could be a similar question to whether the evidence is close. But there is case law that says that that reasonable probability doesn't have to be, it's less than 50%. So we're just, again, Chip doesn't have to prevail on his claim at this point. But to answer your Honor's question, and we're assuming that the jury gets the instruction telling them to view Carpenter's testimony with caution. And if the jury can't believe a lot of what Valerie Carpenter is saying, I think the state's theory of the case or the state's ability to prove its case certainly becomes much weaker. You have Robert Franklin testifying to what happened, but he doesn't actually identify Chip as the shooter. That comes from Valerie Carpenter. If you can't believe her testimony, or if you can't believe significant parts of her testimony, then that's something that makes the evidence close in this case. He did. Franklin did testify that the voice on the phone that he heard in a phone call prior to the shooting, that it was the same voice as the person who held the gun to him. Correct? That's correct. That's correct. Oh, go ahead. Sorry. And the defendant also asked to speak to the police about the allegations and why was she charged when she never touched the gun? Sure. So, um, well, first of all, with Franklin's testimony about recognizing the voice, he still didn't identify Chip. Right. So that's not going to be enough to say, oh, yeah, it was him. He heard a voice that sounded familiar from the phone. In regards to Chip's statement that, that why is she being charged? I mean, that just is a general statement. That's not anything that admits that, that he himself was the shooter. It's just, he's just asking the police why is she being charged? So, I don't think that's probative enough to to make the evidence overwhelming in this case. Again, Valerie Carpenter's testimony is the key to the state's case. And without that, the state's case is very much weaker. And that's, that's the reason why here, the accomplice instruction was so important, because it really tied in console strategy, it really, really would have reinforced her arguments. It's very powerful. It's very different to hear from the judge telling you that you have to view a certain witnesses testimony with caution. And if that instruction was given here. It's our position that there was at least a reasonable probability that the jury could have reached a different decision. Counsel. What does the word accomplice implicate? Does it implicate a co-conspirator? Or does it implicate a person who is totally devoid of knowledge regarding the offense? Well, the accomplice is someone who, under the definition from Lewis, it's someone who can have been charged with the offense. So, that would be my definition of an accomplice, someone who can, who could have been charged with the offense, which is exactly what happened here. And if they were charged with the offense, would it be more probable or less probable that they would know who their accomplices were? Well, it would be certainly more probable that they would know, but they would also have, I mean, the reason why we have the accomplice instruction is because they're more motivated to potentially lie and place the blame on someone else. So, I mean, that's, that's the whole reason for the accomplice instruction. Well, your argument makes sense until you suggest that Miss Carpenter could not only be in two different places simultaneously, but could change her sex or gender as well. Because I believe the evidence is overwhelming that the perpetrator who fired at the victim was a man. And as Justice Burkett pointed out, the man also was identified by the similarity of his voice. And so, by labeling Miss Carpenter as an accomplice, would it not be an admission by counsel that the defendant was also an accomplice and therefore he was the sole man or the sole individual that fired upon the victim? Well, first of all, I believe one of the witnesses said that they weren't sure whether the shooter was a man or a woman. But in any case, Carpenter didn't have to be the shooter to be an accomplice. She could have been an accomplice in another way. And the defense is not responsible for finding an alternative theory as to who the shooter was. The defense's job is just to prove, is to defend against the state's case. It's the state's job to prove that ship was the shooter. And then, if you're saying that the accomplice instruction is only appropriate when someone is denying their involvement, it's, I mean... The counsel who misstated the defendant regarding the issue regarding whether or not she ever touched, Miss Carpenter ever touched a gun, it was claimed that the counsel was ineffective on the basis that they didn't, the defendant's counsel did not attempt to admit that impeachment or that police report as substance of evidence. And the decision that I believe I wrote indicated that it was sound strategy because it would emphasize the fact that the defendant had knowledge or was present during the crime. And you don't, as a matter of trial strategy, attempt to put up signage indicating that when you claim that your defense is, you didn't do it, identity is highly suspect, you don't present evidence that puts your client at the scene of the crime. And why, explain to me in a different way, how is it that if you call someone an accomplice, that doesn't imply, infer, or establish, or at least prejudice the jury to believe that the defendant was probably a participant in the crime? Well, under what you're saying, then the accomplice direction would never be appropriate. Like you're, any, any case... No, it would depend upon the facts. It would depend upon the strategy. And what you're attempting to do is suggest that my commentary, if applied across the board, would never work. But you went one step further and you say any trial strategy would never work and the instruction should never be given. And that's a bridge too far, I submit. Mr. Youn, essentially, there's no dispute that Mr. Franklin was shot. There's no dispute. And with regard to follow up with what Justice McClaren was just talking about, giving the accomplice instruction would, may have cast more doubt on Carpenter's testimony as to her level of involvement and what she knew and what her motivation was when she caused Mr. Franklin's death. How would it have affected her testimony regarding the identity of the shooter? I mean, I just, I went through the entire record. I just don't see it. How would it have cast doubt on her testimony regarding the identification, especially in light of what Justice McClaren said regarding his statement to Trujillo? I, it just, I see that you understand the question is, there are times when the accomplice instruction is not appropriate. And even if it is, even if it could have been or should have been given, the question is its impact on the outcome. Well, it seems to be that your honors are saying that it could have hurt the defense's case if the accomplice instruction was given, but I would submit that it could only have been helpful here. Again, this is a case where the accomplice instruction would have cast doubt on Carpenter's testimony as a whole. But in deciding whether or not it's sound trial strategy, you look at potential arguments, don't you? Potential arguments like... Or and against, giving the instruction. Right. Well, I just don't see how, like, how it could have harmed Shipp's case where Carpenter's testimony, where you're trying to discredit Carpenter. And if you discredit her overall, you know, and in general, then you can't believe how this, how the shooting happened. And you can't believe her testimony that it was Shipp that was the shooter. Well, there were civilian witnesses who corroborated much of what she said, correct? Yeah, there were civilian witnesses that saw the shooting or that saw the events unfolding. But in terms of, and again, I'm not, there's no dispute that a shooting occurred here that Franklin was shot. The state's job here is to prove beyond a reasonable doubt that it was Shipp. And again, my point is, is that they rely on Carpenter's testimony to establish that, her story of how it unfolded, her story of why Franklin was there, and ultimately her ID. Now, if you give the, again, if you give the accomplished instruction here, you would, I'd imagine that the jury as a whole had to view Carpenter's testimony as a whole with caution. And if you're doing that, then there's less inclination to believe her testimony and thus the state's case that, hey, this was Shipp was the shooter. So I hope I answered your honor's question in that regard. So what about the 9-1-1 call? I want to give you time to address that. Oh, sure. Thank you. So yes, the 9-1-1 call, I first want to mention that it was basically a live recording of the shooting and it was played for the jury multiple times, including twice during deliberations. And although 9-1-1 calls generally fall under the excited utterance exception here, there is an exception to the exception identified in the case I cited, people be gray. And that applies when the 9-1-1 call or any excited utterance is used solely as a prior consistent statement to solely repeat the witness's testimony at trial. And that's what happened here. The 9-1-1 call, at least the content of the 9-1-1 call was used to just repeat what Robert Franklin already had testified to at trial. And then you have this, not only you have that bolstering effect, but you also have the prejudicial effect of this emotional appeal to the jury where you hear, you could clearly hear the victim is scared. You have this sympathy elicited for the victim. So that just creates a risk again that the jury decide this issue or decide this case based on something besides factual analysis, on sympathy, on an emotional appeal. So that is the error here. And again, when you combine both of these errors, that certainly creates even a greater risk that there could have been a different verdict at trial. And I just want, as a final point, I just want to be clear here. This is not a case where direct appeal counsel had raised other issues. Direct appeal counsel raised a single one act, one crime issue that only could have resulted in paper relief. So this is a classic case where SHIP was denied effective assistance of appellate counsel. These issues should have at least been litigated on direct appeal. And on that basis, SHIP's petition should be advanced for further proceedings to the third stage. Thank you. Any other questions? No. Thank you. Thank you. You'll have an opportunity to make rebuttal. A question. Are you Chinese by any chance? I'm Korean. There is an idiosyncrasy that's different between English surnames and Oriental. And that is, is that the surname comes first and the first name comes last. Right. And so what I'm trying to find out is, what is your surname? Is it Chan or is it Yoon? Yoon is my surname. Yoon is my last name. Chan is my first name. Okay. Thank you. Yeah, no problem. Mr. Chan, you'll have an opportunity to make rebuttal. Okay. Thank you. Thank you. Ms. Harrington, you may proceed. Good morning, Your Honors. Counsel, may it please the court. My name is Lynn Harrington and I represent the people of the state of Illinois. Your Honors, there are a myriad of reasons why the post-conviction court properly dismissed the defendant's amended successive post-conviction petition. Since the court spent a good amount of time on the IPI issue, I will start there. This whole issue is really a red herring, Your Honors. Whether the Lewis test applies or not, and I agree, it does apply. Simply because a defendant is entitled to an instruction doesn't mean that it has to be shoved down his throat. This case is different than in Lewis. In Lewis, the court specifically said it doesn't make any sense why defense counsel wouldn't ask for this instruction because his whole theory at trial was that this individual named Lovey was his accomplice. Here, it's the total opposite. From reading the record, it's clear that defense counsel's strategy was that someone other than the defense did it and that there wasn't enough evidence that the shooter had the intent for first-degree murder. That was it. So defense counsel had to walk a really fine line here between trying to show the jury that Carpenter was not credible and also arguing my client wasn't anywhere near this scene. He had nothing to do with it. And counsel did a very good job on cross-examination with Carpenter. He hit her about that she never filed any police reports about the defendant abusing her, that she was a three-time felon who currently was on MSR, that she made a deal with the state for reduced charges, and that she gave four inconsistent statements to the police originally about whether the defendant was involved or not. There's no dispute, is there, that she was involved. The trial court made a finding, a specific finding, that she was involved in the circumstances that brought Mr. Franklin to the apartment. So she clearly was involved. She had criminal intent. Yes, Your Honor. She clearly was involved. So the defense would have been entitled to the accomplice instruction. Absolutely, absolutely. But a trial counsel has to make these strategic decisions, and it would be ridiculous for counsel to ask for this accomplice instruction when his whole theory was that he couldn't have been the accomplice because I wasn't even there. We didn't do anything together. So obviously the trial court properly did not ask for that instruction. And since there was no error in the trial court not requesting this instruction, there was no error on the appellate counsel in not bringing up this issue because it had no merit. Turning to the second issue, Your Honor, with regard to the 9-1-1 tape, again, appellate counsel had to look at this issue and know that the introduction of evidence, the standard is abuse of discretion. Even defendant himself admits that generally 9-1-1 tapes are admissible into evidence. They have to meet the test that's been long held, and I believe it was this court in Morales in 2021. The three requirements are an occurrence sufficiently startling to produce a spontaneous and unreflecting statement. But we know darn well the poor guy was running down the stairs screaming that he was getting shot. An absence of time to fabricate, obviously no time to fabricate at all because it was literally during the offense. And the statement was related to the circumstances of the occurrence. So all three of those set it out. And Illinois Rule of Evidence 803 says that a prior consistent statement meets the requirement for an excited utterance. It's admissible as an exception to the hearsay rule. In addition to that, as the state pointed out in its brief, the purpose of listening to that was to hear how many shots. Because again, the state had to have enough evidence introduced that defendant had the specific intent to kill. And by listening to the 9-1-1 tape, you could also hear those bullets being fired. Especially because Franklin was a little confusing on his testimony. He didn't actually know how many times he was shot. He said he had four holes in his leg, but couldn't really answer if they were entrance wounds or exit wounds. So also in defendant arguing that it was error for the jury listening to the call several times. He cited no case law for that proposition. And there was no objection. So then we're looking at forfeiture of that issue. So then we're looking at plain error. And if you look at the closely balanced evidence, Your Honor, it's obvious that there is overwhelming evidence of guilt here. And it certainly was not closely balanced. We've got Officer Fabry saying he was about 150 yards away from defendant. And he heard 46 shots. He also said he described the defendant as between 5'7 and 5'8, 170 to 190 pounds. But Carpenter testified that the masked man had the same build as a defendant. And she also testified that he used the same gun that he had earlier threatened her with when he shoved her into the bathroom. Jessica, the neighbor, testified that she heard somebody scream, he's got a gun. Saw defendant run up to the middle of Lake Street, turn around and start shooting, then ran to the west. The victim, which is the biggest piece of evidence, and the state strongly disagrees with opposing counsel's comment on oral that the voice testimony is not enough. He has no case law for that proposition or certainly has not cited any that I'm aware of. When the victim says, this guy was screaming at me on the telephone and threatening my life and the life of my family. And then later he puts a ski mask on and is telling him he's going to kill him and telling him to put a gun in his mouth. That's very good evidence that he tied this defendant, that the state proved the defendant was the assailant. So he doesn't win on forfeiture, Your Honor. My last point, Your Honor, is something that I think is important to bring up. And that's the Supreme Court's decision in People v. Johnson. And if you look at People v. Johnson, the facts of that case are different than this case. Because in Johnson, the defendant specifically alleged in his pro se successive post-conviction petition that I asked my retained counsel to add these in and he said no. But here, we don't have that. And in looking at Johnson again, preparing for oral argument, it makes it clear that that has to be a requirement. It has to be a requirement, because if not, if you don't have to make that allegation, what we're doing here is we're putting the post-conviction counsel's burden higher than an appellate counsel's burden. And we know, as the state cited in its brief, that appellate counsel doesn't have a duty to comb the record everywhere. And defendant has a Sixth Amendment right to an appellate counsel, but only a statutory right to post-conviction counsel. So any defendant could just say, well, he didn't allege this, this, and this. I get to go on. And at the hearing on the motion to dismiss, defense counsel specifically said that, oh yeah, no, my client alleged in his pro se post-conviction petition, successive pro se post-conviction petition, that he told counsel to raise these issues and they didn't. However, if this court looks to common law record page 405, it's clear that defendant did not raise that issue. He says petitioner was denied reasonable assistance of post-conviction counsel where counsel did not allege appellate counsel's ineffectiveness for failing to raise the following claims. And then he goes on to cite his claims. That doesn't mean he said, and he didn't say, I asked him to do it, but he said he wouldn't do it. And without that, without that requirement in Johnson, Your Honor, as a matter of law, he loses. And the state acknowledges the fact that this issue was not raised in our brief. However, the standard review here is de novo, and it's important for the court to look at this issue as we all, of course, need to comply with Supreme Court law. And if the Supreme Courts are saying in Johnson, then that's an absolute requirement. Then defendant loses here on that ground alone. Counsel, what is your response to Justice Burkett's question relating to the possible evidence that would be presented if there were a third stage hearing to determine the merits as to whether or not the case, the conviction should be vacated. You remember the question? I was just going to ask you about that, Your Honor, because I, my answer first would be, it's clear that there, that there's no substantial violation of a constitutional violation, but I don't think that's exactly what you're asking. No. Yeah. If Justice Burkett would clarify, please. My question was simply what evidence would be offered at the third stage hearing in terms of the counsel's citation to Donna Gala in his reply brief, where the question there was an evidentiary issue. Here would be the issue is strategy, a testimony from the lawyers. Why the two lawyers? I think Yetter and Fletcher, the defendant had two public defenders at trial and who both participated vigorously. So my question would be, who would testify? It's not an evidentiary issue in terms of a conflict and testimony between the state's witness and some expert. It's the testimony of the deputy public defenders who represent the defendant. Yes, I completely agree with Justice Burkett. He is right. What evidence would we have? I don't think we would have any. You know, the defense counsel got up there. He would honestly testify that it would make no sense whatsoever to request the IPI 3.17 instruction. Well, we don't know. We don't know that either, because Ms. Yetter even in her closing argument said to the jury, I forget things all the time, basically. You know, I hope I didn't forget anything. So maybe this was an oversight. She didn't look at the IPI instructions before the instruction conference. It may have been better practice for her to say, Judge, I recognize that this court has found that Ms. Carpenter was involved, but we're not asking for an accomplice instruction for these reasons, X, Y, Z. And the better practice would be for the state to also say, Judge, we recognize that Ms. Carpenter was an accomplice. We're not offering an accomplice instruction. That wasn't done here by either the state or the defense. So Mr. Yoon's point is, there should have been a record and a third stage hearing would give an opportunity for that record to be made. Justice Burkett, I do agree that it would have been a better practice to put this information on the record. But that doesn't change the fact that there's no case law that says a defendant has to take an accomplice instruction. There's nothing there. So there would be no reason for it. It's on the record that we have. There's no error here. Defendant did not prove a substantial violation of his constitutional rights for all these reasons, including the affidavit that does not state that he specifically asked retained counsel to add these issues in and counsel didn't. If the court has no further, the amended post-conviction petition did not offer affidavits from either Ms. Fletcher, Mr. Fletcher or Ms. Yetter, correct? That is correct, Your Honor. And the state recognized that in its motion to dismiss. And at the hearing, again, like I referred to earlier, defense counsel said that defense requested that defendants pro se affidavit be the affidavit, although it was not attached to the amended successive post-conviction petition, it was treated as his affidavit. And that's where he referred to what I just read to the court, his allegations of how he was denied the reasonable assistance of counsel. For these reasons, Your Honor, we respectfully request that you affirm the judgment of the court below. Thank you. Thank you. Any other questions from the panel? No, thank you. Thank you. Mr. Chan, you may proceed with rebuttal. All right. So first, just want to come back to the accomplice instruction. So one of the points that the state makes is that because Schiff's theory was that he wasn't there, that the accomplice instruction wouldn't have been appropriate. But Carpenter is saying that he was there, and we're asking, and then again, the accomplice instruction and trial counsel's strategy at trial to say that you can't really believe what Carpenter is saying, that he was there. The accomplice instruction wouldn't be appropriate there. That would have, again, told the... What about the absence of an affidavit from either Mr. Fletcher or Ms. Yetter? I mean, counsel was appointed, and when post-conviction counsel's appointed, he has a responsibility to fashion the defendant's claims and to add any supplement from the record or additional affidavits, correct? And there's no affidavits from either Yetter or Fletcher as to their rationale or reasons for not asking for an accomplice instruction. Yes, that's correct. And it's our position, first of all, that you can determine from the record just from what counsel says in closing, especially just repeatedly arguing that Carpenter is not believable. You can't believe what she says, that she wanted the jury not to believe Carpenter's testimony. And again, there's no harm in requesting an instruction just reinforcing her argument that Carpenter is not a believable witness. So the record as it is would suggest, at least for purposes of second stage, that... Sure, and I am inclined to agree. And I didn't raise this issue in my brief, but to the extent that affidavits should have been added then, post-conviction counsel at the second stage provided unreasonable assistance. But again, we didn't raise that issue in the brief, but... Well, our review is de novo. And the novel review would allow your honors to reach that conclusion on appeal. But again, we do also believe that the record shows enough to make a substantial showing. It creates legal sufficiency for the ship's claims of ineffective assistance. Just also briefly in regards to this new cause argument raised by the state on an oral argument. So yes, that happened in Johnson. So what happened in Johnson is that the post-conviction or after the petition was summarily dismissed, the client filed a motion to reconsider saying, hey, counsel should have raised these issues. Nothing in Johnson, though, says that that's the exact procedure that has to be followed. In fact, in Johnson, they actually say that a lot of these claims are going to be coming up on appeal. And to put the onus on someone who retains counsel to find the issues themselves in order to exercise his right to reasonable assistance just renders that right meaningless. If you can't raise these issues on appeal unless you file a motion to reconsider, then every petitioner is just going to forfeit the right to reasonable assistance at the first stage when they retain counsel. So that's just inaccurate and a misreading of Johnson, to be honest. And again, the legislature intended the right to reasonable assistance at the first stage to be meaningful. When you retain counsel and counsel messes up, fails to find an issue that is meritorious, then you should be able to have the right to exercise your right to reasonable assistance without having to go through the record yourself and find the issue. So, and essentially, that's what Shipp did in this case. He filed a successive petition after this Johnson decision came out at the earliest opportunity. So there is no forfeiture on his part for failing to bring these issues up in his initial petition. And again, if your honors don't have any other questions, that's all I have as well. And we would just again ask that Shipp's petition be advanced to third stage. Thank you. Any other questions? I don't. No, Mr. Yoon, I just want one point though. Spank quote rule 341 requires a concise statement of the applicable standard of reviewing. And you did provide a statement, but it's in a footnote. So make sure in the future you make a clear statement in your, in your brief. Okay. Oh, I apologize about that. I will do so in the future. Thank you. Mr. Chan, did you hear Miss Harrington's iteration of the factors or facts relating to defense counsel's impeachment of Miss Carpenter? Things like she was a convicted felon, she was on MSR, etc. Do you remember her commentary relative to that? Yeah, I do. And if there are impeaching factors as stated, both by Miss Harrington and in the record, how is it that the accomplice instruction wouldn't be cumulative and therefore harmless error because the defense counsel emphasized the fact that it shouldn't be considered cautiously, or the testimony shouldn't be considered cautiously, it should be deemed incredible or not credible. Right. So, I mean, I don't believe an instruction is cumulative to argument from counsel on the instruction comes from the court. And that's a different, I feel like that's more powerful if that happens at trial. I mean, well, of course, the defense attorney is going to say things that, oh yeah, this state's witness is not credible. But if you hear it from the court that they're supposed to, under the law, view the accomplice witness's testimony with caution, that's different. And I feel like that's much more powerful. And in this case, again, that's what we submit the error was that you counsel missed this opportunity to really put the cherry on top of her argument. And again, I'm not trying to like criticize counsel's performance. I thought she did a good job too, but that's not the measure of Strickland. Strickland analyzes the issue itself. And here, that instruction would have made a difference. There was a reasonable probability, there's the potential that that error made a difference. And that's the point here. And that's all that has to show at this point. Well, your response strikes me as being a statement suggesting that if the accomplice instruction is applicable, then it should always be used in every instance, because the statement made by the trial judge is so important that it's a sine qua sine. And any attorney who fails to submit an accomplice instruction is ineffective. Well, yeah, I mean, if your strategy is based... I'm not trying to put words in your mouth. I don't mind. I understand. And I mean, if the trial attorney's strategy is to say, hey, this witness is unbelievable, then yes, you should request it every time. I mean, whether the issue is harmless, whether there's prejudice, that's a different issue. And here, you know, I mean, if there are like 12 witnesses who identified Chip as a shooter, then okay, maybe that's not going to be prejudicial. But here, when you have the main witness, Valerie Carpenter, as the only positive ID, and you have counsel repeatedly saying, hey, you can't believe her, you can't believe her. And then not requesting an instruction, even saying that she's an accomplice, and that's why she can't believe her. I mean, in a case like that, yeah, then you need to request an instruction. And that's our position in these type of cases. Something that you have not really discussed is the presumption that counsel provided effective assistance, and you have to overcome that presumption, right? Well, I mean, I believe that the relevant test is the Strickland test, which is whether counsel's performance on that issue was reasonable. In light of the presumption. Right, right. There is a presumption. That's correct. Did your research ever disclose a case called People v. Teolia Jordan? I am not familiar with that case, Your Honor. It's a 2016 case. And I essentially wrote a special concurrence that was a statement that Johnson, or the decision in Johnson was appropriate, that if in fact, there is retained counsel at the first stage, that a defendant is entitled to effective assistance. At the first stage, the only problem was that you couldn't cite that because it was too early in the game. And it was only a special concurrence, even though I wrote the majority decision. So I was just curious as to whether you came upon it or not. Well, Your Honor, I'm glad to see that you were correct on that, ultimately proven correct by the Supreme Court. Well, I had to change my mind because in 2015 in SHIP, I said no. So I will, at least this is a historical incident where I at least changed my mind. Okay, since there are no further questions, we will, I will ask the Marshal to close the proceedings. Nice job. Thank you, Your Honor. Both sides. Thank you, Your Honors. Thank you.